UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

JARED BOSWELL,

    Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

Civil Action No. 7: 23-66-KKC

**MEMORANDUM OPINION AND ORDER**

*** *** *** ***

The United States of America has filed a motion to dismiss the complaint filed by plaintiff Jared Boswell.[1] *See* [R. 60] Boswell has filed his response, to which the government has replied. *See* [R. 68, 69] The motion is therefore ripe for decision. As explained more fully below, the Court will grant the United States's motion in part, deny it in part, and refer this matter to a Magistrate Judge for pretrial management.

### A. Background

According to his complaint, in April 2021 Boswell was confined at the United States Penitentiary – Big Sandy in Inez, Kentucky. [R. 1 at 4, 11] Boswell alleges that when he asked Bureau of Prisons ("BOP") staff to place him in protective custody, five senior officers (Kevin Pearce, Michael Childers, Clinton Pauley, Samuel Patrick, and John Doe) severely beat him,

---

[1] In several places the government indicates that it seeks dismissal of the claims against both itself and against Arnett, Blevins, and Childers. *See* [R. 60 at 2 n.3, 18; R. 60-1 at 1, ¶2] But the United States had already moved to substitute itself as the defendant for those individuals. *See* [R. 59] Upon substitution under 28 U.S.C. § 2679(d), the individual defendants are no longer parties to the case. Accordingly, when the Court granted that motion, it dismissed the three officers as parties. *See* [R. 64 at 2, ¶ 4] There are therefore no claims against the individual officers to dismiss. *Cf. Jackson v. United States*, 751 F.3d 712, 721 (6th Cir. 2014).

causing serious injury. *See id*. at 11. Boswell states that several days later two other guards (Darrell Arnett and Aaron Blevins) placed him in a segregation cell, where they permitted another inmate to assault him. [R. 1 at 12-13] Unnamed guards then placed Boswell in a restraint chair, where he was kept for more than ten hours. *See id*. at 13.

Boswell filed suit regarding these events on August 10, 2023, more than two years after they transpired. *See* [R. 1-6] The Court conducted its initial screening pursuant to 28 U.S.C. § 1915A(a) in January 2024. *See* [R. 10] Five of Boswell's twelve claims survived that review: Counts I, III, and IV against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*.; Count XI, a claim for "civil harassment" under Kentucky law against Arnett and Blevins; and Count XII, a claim for "menacing" under Kentucky law against all seven BOP officers. *See id*. at 2-6. The Court later granted the United States's motion pursuant to Section 2679(d) to substitute itself as defendant in lieu of Arnett, Blevins, and Childers. [R. 59, 64] By separate opinion the Court has dismissed the claims against co-defendants Kevin Pearce and Clinton Pauley. *See* [R. 80] Through its motion to dismiss, the United States seeks dismissal of the claims remaining against it on various grounds. *See* [R. 60]

### B. Statute of Limitations

The Court begins by addressing the argument with which the government concludes. At the close of its motion, the United States briefly claims that Boswell did not file suit within six months after the BOP denied his request for administrative settlement of his claim. *See* [R. 60 at 18] This argument appears to be derived from the Court's own observation that Boswell has consistently used a private delivery service, initiated from without the prison walls, to file documents with the Court. That included, pertinent here, his original complaint. *See* [R. 58 at 2]

2

That practice means that Boswell's filings are not entitled to the benefit of the prison mailbox rule. *See* [R. 79 at 4]

> The FTCA contains two limitations periods for asserting claims:
>
> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).  The United States's argument concerns the second, six-month period to file suit after the agency administratively denies a claim.  In this case, the BOP denied Boswell's claim on February 8, 2023, but he did not file suit until August 10, 2023, two days late.  Boswell implicitly acknowledges that his complaint was untimely, but seeks relief in the form of equitable tolling based upon his *pro se* status and entirely unspecified "constraints of incarceration and mailing delays."  *See* [R. 68 at 10-11]  There are good reasons to doubt whether those contentions are sufficient to warrant equitable tolling under these circumstances. *Cf. Dann v. United States*, No. CV 6: 17-32-DCR, 2017 WL 3873702, at *2-3 (E.D. Ky. Sept. 5, 2017), *aff'd*, No. 17-6330, 2018 WL 5905589 (6th Cir. June 18, 2018).  Still, the United States's original argument was both brief and factually undeveloped, and the government offered no response at all to Boswell's request for equitable tolling.  *See* [R. 69]  Given the government's evident indifference, the Court finds insufficient basis on the present record to dismiss Boswell's FTCA claims as time barred.

### C.  Negligence (Counts I and IV[2])

---

[2]  Boswell identifies Count IV as one for "failure to exercise reasonable duty of care." [R. 1 at 18] That phrase merely sets forth loosely the essential elements of a cause of action for negligence. *Cf. Kirschner by Kirschner v. Louisville Gas & Elec. Co.*, 743 S.W.2d 840, 848 (Ky. 1988); *see generally* Restatement (Second) of Torts § 281 (1965).  The Court treats it as such.

3

In Count I of his complaint, Boswell alleges that the BOP was negligent by: (a) failing to properly train its officers to ensure a safe prison environment; (b) allowing unqualified personnel to serve as correctional officers; (c) permitting a "culture" of indifference to civil rights violations; and (d) not installing video cameras in the Lieutenant's Office. *See* [R. 1 at 14-15, ¶¶ 76-78, 80] In Count IV Boswell alleges that Arnett and Blevins, who allegedly allowed another inmate to attack him, *see* [R. 1 at 13, ¶¶ 60-61], were negligent, presumably by putting him into the cell while still handcuffed and/or not intervening sooner when another prisoner attacked him. *See* [R. 1 at 18] In its motion, the United States argues that Boswell's negligence claims are barred by the "discretionary function" exception to the FTCA. [R. 60 at 6-11] The government asserts that it presses a facial attack to subject matter jurisdiction. *See* [R. 60 at 5 ("The current motion represents a facial attack on Plaintiff's claim of subject-matter jurisdiction.")] So the Court takes Boswell's allegations are true when deciding whether they establish jurisdiction. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

First principles first. Ordinarily, the United States is entitled to sovereign immunity from suit. *Brownback v. King*, 592 U.S. 209, 211, 141 S. Ct. 740, 745 (2021). The FTCA waives that immunity for certain types of claims, including ones for personal injury caused by federal government employees. *See id*. at 212 (*citing* 28 U.S.C. § 1346(b)). But there are exceptions, including one for injuries resulting from a government employee's performance of discretionary acts. *See* 28 U.S.C. § 2680(a) (excepting any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.").

The discretionary function exception applies, and a plaintiff may not sue under the FTCA, if two things are true. First, the governmental action must involve an element of choice.

4

*United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267 (1991). Choice (or "discretion") is necessarily involved unless "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee had no rightful option but to adhere to the directive." *Milligan v. United States*, 670 F.3d 686, 693 (6th Cir. 2012). Second, the governmental action at issue must be of the kind susceptible to analysis as a matter of social, economic, or political policy. *United States v. Gaubert*, 499 U.S. 315, 322-23, 111 S. Ct. 1267 (1991). The plaintiff's claim must not effectively require the Court to "second guess the political, social, and economic judgments of an agency exercising its regulatory function." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S. Ct. 2755 (1984). Thus to avoid dismissal, the FTCA plaintiff "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 397 (6th Cir. 2004).

Ample authority supports the conclusion that Boswell's negligence claims are barred by the discretionary function exception. In the first step of the analysis, Boswell does not point to any applicable statute, regulation, or policy which mandated that the BOP make particular choices regarding these matters. Such mandates might require a certain amount of training for its staff; insist that BOP officers obtain a professional certification; dictate that video cameras be placed in certain locations; specifically direct an officer to handcuff or uncuff an inmate in a particular manner when placing him in a cell; or establish inflexible rules about how and when to terminate an altercation between inmates. Boswell points to no such rules in his complaint, and the Court is not aware of any statute or regulation dictating the conduct of the officers in such

5

circumstances. To the contrary, generally the BOP and its officers have broad discretion when making decisions about inmate safety. *Montez*, 359 F.3d at 396-97 (*citing* 18 U.S.C. § 4042(a)).

At the second step of the analysis, the subjects about which Boswell complains in Count I are matters within the policy prerogatives of the BOP. *See Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014) ("Supervision, training, and retention require policy judgments – the type that Congress intended to shield from tort liability.") (cleaned up); *O'Bryan v. Holy See*, 556 F.3d 361, 384 (6th Cir. 2009) (finding that a claim of negligence in hiring, training, and supervision fall within the discretionary function exception) (collecting cases); *Hill v. United States*, No. 13-CV-307-JPG-RJD, 2017 WL 3124736, at *3 (S.D. Ill. Jul. 24, 2017) ("Housing, lighting [including cameras], security, and staffing all fall within the broad discretion of prison administrators as they all involve an element of judgment or choice and are within the type that the exception was designed to shield from liability."); *Ramirez v. United States*, No. 4:17-CV-1142, 2018 WL 6977340, at *3 (S.D. Tex. Dec. 18, 2018) (prisoner's claims that BOP staff "negligently failed to keep Plaintiff safe by not installing or maintaining video cameras and/or by their hiring, supervision, or training practices … are clearly barred by the discretionary function exception."), *report and recommendation adopted sub nom. Ramirez v. U.S. Dep't of Just.*, 2019 WL 121248 (S.D. Tex. Jan. 7, 2019).

The claims in Count IV are likewise barred. Boswell states that Arnett and Blevins took him to the segregation unit to be placed in a cell with another inmate. [R. 1 at 12, ¶ 55] Both Boswell and the incumbent resident were inside the cell, hands cuffed. Once the door closed, the other prisoner pushed Boswell out of the way so that he could have his hands uncuffed first. After one of the officers freed that inmate from his cuffs, he immediately attacked Boswell. Boswell alleges that Arnett and Blevins allowed the attack to continue until the other inmate

6

simply stopped hitting him. *See id*. at 13, ¶¶ 60-61. Boswell suggests that the officers did not follow customary BOP procedures during this sequence of events. *See id*. at 12, ¶¶ 56-59.[3]

In deciding whether the officers' choices are of the kind that could have been grounded in "political, social, and economic judgments" of the BOP, *Varig Airlines*, 467 U.S. at 814, the Court must "focus on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. And day-to-day decisions by lower level employees can fall within the exception. *See id*. ("Discretionary conduct is not confined to the policy or planning level."). Applying these principles, courts have consistently held that "a federal correctional officer's decision how to restrain a prisoner falls within the discretionary function exception." *Hurt v. Dep't of Just.*, No. 2:22-CV-00048-JJV, 2023 WL 2989982, at *4 (E.D. Ark. Apr. 18, 2023); *Hatten v. Bledsoe*, 782 F. App'x 91, 96 (3d Cir. 2019) ("the relevant statute and regulations here afford the BOP discretion in deciding how to best protect and restrain inmates, and the judgment involved is the type of judgment that the exception was designed to shield.") (cleaned up); *Lewis v. United States*, 618 F. App'x 483, 487 (11th Cir. 2015); *Greene v. United*

---

[3] Boswell's allegations do not clearly indicate that, had the BOP's "customs" been followed, things would necessarily have turned out any differently. Boswell states that "customarily":

> (a) an inmate is transported to segregation with his hands cuffed behind his back, ¶ 56;
> (b) both inmates are "secured" (presumably handcuffed) before an inmate enters or leaves the cell, ¶ 59;
> (c) the inmates remain handcuffed inside the cell as the officers leave and lock the cell door, ¶ 57; and
> (d) guards then remove the handcuffs from one inmate through a slot in the cell door, ¶ 58, and then presumably repeat that process for the other inmate.

This "custom" does not result in both inmates being freed from their handcuffs simultaneously. Indeed, it is difficult to see how that would be possible if these procedures are followed: at some point, either the incumbent prisoner or the new arrival will be handcuffed within the cell while the other is not, rendering him vulnerable to attack by his cellmate.

*States*, No. 6: 22-CV-120-WOB, 2023 WL 309320, at *4 (E.D. Ky. Jan. 18, 2023); *Smith v. United States*, No. 7: 20-CV-94-DCR, 2021 WL 206355, at *5 (E.D. Ky. Jan. 20, 2021).

The same holds true regarding an officer's decision about how and when to break up a fight between inmates. *Cf. Calderon v. United States*, 123 F.3d 947, 949-51 (7th Cir. 1997) (holding that the discretionary function exception barred FTCA claim by federal prisoner injured during assault by another inmate); *Buchanan v. United States*, 915 F.2d 969, 972 (5th Cir. 1990) ("Prison officials' minute-to-minute decision making in the chaotic circumstances of a riot is a classic example of an activity requiring the exercise of discretion .... We do not believe that Congress meant for judges, through hindsight, to second-guess such difficult decisions."); *Young v. United States*, No. 12-CV-2342-ARR-SG, 2014 WL 1153911, at *14 (E.D.N.Y. Mar. 20, 2014) ("Prior cases establish that the decision to wait for backup and the determination about how many staff members should be present before intervening are exactly the types of policy judgments that the discretionary function exception is intended to shield."); *Norris v. United States*, No. 5:10-CT-3026-FL, 2013 WL 756293, at *4-6 (E.D.N.C. Feb. 28, 2013) (decision about when and how to intervene in an altercation between two inmates is a policy-based determination); *Wesley v. United States*, No. 3:15-CV-598-TSL-RHW, 2017 WL 831252, *3-4 (S.D. Miss. Feb. 13, 2017) (BOP staff were performing a discretionary function when addressing assault by uncuffed inmate upon handcuffed prisoner in segregation recreation cage); *Ruby v. United States*, No. 1:18-CV-200-SABPC, 2019 WL 2089498, at *3-5 (E.D. Cal. May 13, 2019).

The Court therefore concludes, consistent with the referenced authority, that Boswell's claims in Count I and Count IV are barred by the discretionary function exception to the FTCA.

### D. Civil Battery (Count III)

In Count III of his complaint, Boswell alleges that five BOP officers committed a battery when they responded to his request for protective custody by severely beating him. *See* [R. 1 at 11, ¶¶ 45-48; at 17, ¶ 99-100] The United States contends that because Boswell alleged that the officers were not "provoked" or "justified" when they assaulted him, the battery categorically cannot have been committed within the scope of their employment, as is required for the FTCA's jurisdictional waiver to apply. *See* [R. 60 at 12-13] Circumstances permitting, the Court can address the scope of employment question at the outset of the case because "[w]hether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Landham v. Taylor*, 68 F. App'x 608, 610 (6th Cir. 2003) (emphasis added). Still, the government's argument falters in numerous respects.

The United States presses only a facial challenge to subject matter jurisdiction. *See* [R. 60 at 5] The Court therefore accepts as true Boswell's well-pleaded allegations. *Cartwright*, 751 F.3d at 759. Boswell expressly alleges in his complaint that the BOP officers were acting within the scope of their employment. *See* [R. 1 at 17, ¶ 97 ("At all relevant times, Defendant's (*sic*) Patrick, Pauley, Pearce, Childers, and John Doe Lieutenant - were acting within the scope of their employment as a corrections officer[s] for the BOP.")]. But that statement by itself represents only a legal conclusion, not a factual allegation that the Court must take at face value. *See Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (noting that a court "need not accept as true legal conclusions or unwarranted factual inferences.") (*citing Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)), *cert. denied*, 144 S. Ct. 1353 (2024).

Boswell's complaint nonetheless includes further allegations which indicate that the named defendants were performing their duties as correctional officers during the first (if not

9

both)[4] attacks. *See* [R. 1 at 10, ¶¶ 33-37 (generally describing the defendants' job titles and positions); R. 1 at 11, ¶¶ 45-48 (indicating that the defendants were present in the Lieutenant's Office when Boswell requested protective custody, asked about the nature of his criminal convictions when assessing that request, and personally participated in the assault); R. 1 at 13, ¶¶ 60-64 (indicating that the defendants were present when he was escorted to the segregation unit, permitted the other inmate to attack him and declined to stop it, implied that they had given the other inmate permission ("the green light") to attack Boswell, and issued a false incident report against him). These allegations indicate that the defendants' conduct occurred: (a) at their place of business; (b) during their normal working hours; and (c) in the course of their duties when considering Boswell's request for protective custody and while placing him in a cell. Taking those allegations as true, they are more than sufficient to conclude that the defendants were acting within the scope of their employment when they directly participated in the attack upon Boswell or facilitated another inmate's attack. As this Court has recently noted, asserting a facial attack when presented with such allegations is an exercise in futility because the government's assertion that the defendants were not acting within the scope of their employment will *necessarily* fail. *See Rudd v. United States*, No. 5:22-cv-00201-GFVT, 2023 WL 4936671, at *3 (E.D. Ky. Aug. 2, 2023) ("If the United States were correct and it brought a facial attack, its motion would be self-defeating [because] the Court ... would be obligated to assume that the allegations in Ms. Rudd's complaint are true. ... the Court doubts that the Government intended to fall on its own sword in this manner.").

---

[4] Count III asserts a battery claim arising solely from the alleged assault by Childers, Patrick, Pauley, Pearce, and John Doe on April 13, 2021. It does not relate to the subsequent attack by an inmate on April 19, 2021, and allegedly involving Arnett and Blevins.

The government seeks to avoid this ineluctable conclusion by pointing to Boswell's characterization of the attacks against him as unprovoked, unjustified, and unwarranted. *See* [R. 60 at 1-13 (referencing [R. 1 at 11, ¶¶ 47, 48])] The United States misunderstands and misstates Kentucky law. By its terms, the FTCA exposes the United States to liability for personal injury caused by the "wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *Millbrook v. United States*, 569 U.S. 50, 52, 133 S. Ct. 1441 (2013). Determining "whether the federal employee was acting within the scope of his or her employment [] is governed by the agency law of the forum state." *Does 1-10 v. Haaland*, 973 F.3d 591, 599 (6th Cir. 2020) (*quoting Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008)).

In this Commonwealth, Kentucky courts define the scope of employment through reference to the Restatement (Third) of Agency (2006). *Laible v. Lanter*, 91 F.4th 438, 445 (6th Cir. 2024) (*citing Papa John's Int'l., Inc. v. McCoy*, 244 S.W.3d 44, 51 (Ky. 2008)). Section 7.07(2) of the Restatement provides that an employee acts within the scope of employment "when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control." In Kentucky, "the focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *Papa John's*, 244 S.W.3d at 51; *O'Bryan*, 556 F.3d at 383.

The Kentucky Supreme Court in *Papa Johns* provided a handful of contrasting, illustrative examples involving intentional torts from its precedents. In one case, a bus driver stopped his bus in the middle of the street to assault another driver in a road rage incident. The driver was not acting within his scope of employment because his motive was to settle a personal score, not to further his employer's business. *Wood v. Southeastern Greyhound Lines*, 194

11

S.W.2d 81, 82-84 (Ky. 1946). In another case, a grocery store clerk shot and killed a person during what he thought was a robbery. Even though the employee's conduct flatly contradicted store policy, the clerk was acting within the scope of his employment because his purpose was to protect the store premises. *Frederick v. Collins*, 378 S.W.2d 617, 618-20 (Ky. 1964). Yet another case involved an effort to repossess a vehicle by an employee of an automobile dealership. The employee stopped the car at a stoplight, ordered its driver to get out, and shot the car's tires out when the driver would not comply. The employee was held to be acting within the scope of the dealership's employment because his efforts were intended to serve its business. *Patterson v. Blair*, 172 S.W.3d 361, 363 (Ky. 2005).

Kentucky law thus establishes that regardless of whether the employee's actions are wholly misguided, or even amount to a civil tort or criminal offense, they are done within the scope of employment if motivated by a subjective desire to further the employer's business. *Laible*, 91 F.4th at 445. The lodestar for deciding the scope of employment inquiry is "the *servant's* purpose for the intentional act that was perpetrated." *Rudd*, 2023 WL 4936671, at *5 (quoting *Patterson*, 172 S.W.3d at 370) (emphasis added). In contrast, asking whether the employee's conduct was "provoked," "justified," or "warranted" focuses not on the subjective motive of the employee but on the objective reasonableness of the conduct of persons *other than* the employee, and is therefore misplaced.

The United States also points to a series of this cases where this Court has found that a prison guard was acting outside the scope of his employment when he committed a sexual assault. *See* [R. 60 at 13 (*citing Greene*, 2023 WL 309320, at *3-4)] But in *Greene*, for example, the Court expressly differentiated the alleged sexual assault from the other intentional torts, including physical assault and battery. The Court noted:

12

> Unlike a sexual assault, the physical conduct involved when a prison security guard attempts to bring a non-compliant inmate under control is more likely to be "of the same general nature as that authorized or incidental to the conduct authorized." [*Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000)]. Thus not every excessive use of force by a prison guard, even when characterized as a battery or an assault, will necessarily fall outside the scope of guard's employment. *Cf. Majano v. United States*, 545 F. Supp. 2d 136, 145-47 (D.D.C. 2008). But as noted above, under Kentucky law the officer's purpose or motive in engaging in the conduct complained of is critical. *O'Bryan*, 556 F.3d at 383. Here, Greene alleges that the officers removed him from his cell, assaulted him, and filed "trumped-up" disciplinary charges against him, not for any legitimate job-related purpose, but instead with the design to intimidate or retaliate against him for his refusal to drop his complaints against BOP officer Godsbury. Such conduct is in no way performed in furtherance of the missions or functions of the BOP, and therefore was not performed within the scope of employment.

*Greene*, 2023 WL 309320 at *3. In the cases cited by the United States, the defendant employees acted alone and/or did so purely to satisfy their own sexual or violent desires, not to further the interests of the BOP. *See Rudd*, 2023 WL 4936671, at *5 ("Under Kentucky law, the employer's decision to forbid an activity does not decide the issue if the employee nevertheless believes that he is acting in his employer's interest.") (*citing Frederick*, 378 S.W.2d at 618); *Davis v. United States*, 474 F. Supp. 2d 829, 832 (N.D. Tex. 2007); *Clay v. United States*, No. 05-CV-599-KKC, 2006 WL 2711750 (E.D. Ky. Sept. 21, 2006). Here, the five officers are alleged to have acted in concert with one another, and there is no allegation that any of them acted for personal or vindictive reasons. The complaint adequately alleges facts indicating that the defendant officers were acting within the scope of their employment, and there is nothing in the decisions cited by the United States which requires the Court to reject those allegations as a matter of law.[5]

---

[5] By repeatedly characterizing the officers' alleged battery as a criminal offense and as "counter to BOP's mission and policies," *see* [R. 60 at 13], the Unites States seeks to diminish the scope of its liability for its correctional officers' misconduct to its vanishing point. The FTCA provides that the United States does not waive sovereign immunity if their employees commit certain specified intentional torts, including assault and battery. *See* 28 U.S.C. § 2680(h). But there is an exception

Even if the United States had pressed a factual attack, it would have been problematic. First and foremost, James G. Touhey, Jr., the Director of the Torts Branch, Civil Division, of the United States Department of Justice, has expressly certified that Arnett, Blevins, and Childers were each "*acting within the scope of his employment* as an employee of the United States at the time of the incidents out of which the claims of Plaintiff's Complaint allegedly arose." [R. 59-1 at 1, 2, 3 (emphasis added)] The certification is notable because it covers *both* of the alleged assaults: the first by five officers - including Childers, Pearce, Pauley, Patrick, and John Doe - for directly attacking Boswell, and the second by another inmate apparently at the behest of Arnett and Blevins.

Certification in hand, the United States moved to substitute itself for these three defendants pursuant to the Westfall Act, *see* [R. 59 at 1-2], a request the Court granted after considering the motion when Boswell did not object, *see* [R. 64]. As the Court previously noted, the government's certification is not immediately conclusive. *See* [R. 55 at 3 ("the Attorney General's scope-of-employment certification is subject to judicial review for purposes of substitution.") (*quoting Dolan*, 514 F.3d at 593)] But once the certification is made, courts treat

---

commonly known as the "law enforcement proviso." That language restores FTCA liability for certain intentional torts, including assault and battery, if committed by federal "investigative or law enforcement officers." *See id*. BOP guards fit that definition. *Cf. Chapa v. U.S. Dep't of Just.*, 339 F.3d 388, 390 (5th Cir. 2003); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218, 128 S. Ct. 831 (2008) (concluding that BOP guards qualify as "any other law enforcement officer" within the meaning of the nearly-identically phrased § 2680(c)).

Through the law enforcement proviso, the FTCA expresses a clear congressional intent to hold the United States liable where its "law enforcement officers," including its prison guards, commit assault and/or battery. By pressing an implausibly narrow conception of the scope of employment - that intentional torts committed by its police and corrections officers can essentially never fall within the scope of their employment - the United States seeks to functionally repeal that rule of law, slamming the very door opened by the law enforcement proviso shut. The Court rejects the effort by the United States seeks to turn that well-established law into a dead letter. As the foregoing discussion demonstrates, that effort may gain traction in other states, but in Kentucky, that dog won't hunt.

it as conclusive unless the plaintiff objects. *See Doe v. Meron*, 929 F.3d 153, 160 (4th Cir. 2019) ("After certification, the ball is in the plaintiff's court. If a plaintiff does not challenge the Attorney General's certification, the certification is conclusive."); *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1305 (11th Cir. 2022) (same). Boswell did not object, so the certification was accepted and the substitution ordered. In light of the United States's express certification to such effect, that Childers was acting within the scope of his employment during the alleged battery is conclusively established.[6]

In addition, when evaluating a factual challenge to subject matter jurisdiction, the Court "can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Global Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 805 F.3d 807, 810 (6th Cir. 2015). When conducting its analysis, a district court has "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Muhammad v. United States*, No. 23-5195, 2023 WL 8629041, at *1 (6th Cir. Dec. 13, 2023) (*quoting Cartwright*, 751 F.3d at 759-60)).

---

[6] One might query why the United States so certified for these three officers but not for the other defendants (including Pearce, Patrick, and Pauley) given Boswell's allegation that all of them attacked him during the assault. Simply put, Boswell's complaint allegations are not binding on the government in the certification process, and the officers "may testify differently from Boswell's allegations regarding what transpired." [R. 55 at 3] For example, when faced with such allegations an employee might tell the government that the incident simply didn't happen, that it might have happened but that he wasn't there, or that he was there but that the incident did not transpire as the plaintiff alleged. *See Osborn v. Haley*, 549 U.S. 225, 237, 127 S. Ct. 881, 891 (2007) ("We agree that Westfall Act certification is proper when a federal officer charged with misconduct asserts, and the Government determines, that the incident or episode in suit never occurred."). Further factual development is necessary to reveal the reasons for the apparent contradictions in the government's presentation.

Such evidence could include, for instance, testimony from former BOP Lieutenant Terry Melvin regarding statements he made in his recently-filed plea agreement. *See United States v. Melvin*, No. 7:25-CV-01-REW-EBA (E.D. Ky. Jan. 24, 2025), [R. 10 therein]. In that document Melvin stated that in 2021 more than a dozen senior officers (including an associate warden) and their subordinates at USP – Big Sandy implemented a coordinated policy to assault inmates who requested protective custody. *See id*. at 2-3, ¶¶ 4(b)-(f). Those efforts also assertedly included, in some instances, falsifying incident reports against the assaulted inmates, blaming them for initiating the altercation. *See id*. at 3, ¶ 4(g)-(h). The plea agreement also asserts that on April 13, 2021, "senior Big Sandy staff, including M.C., [] Samuel Patrick, Captain's Secretary Clinton Pauley, and Lieutenant Kevin Pearce," assaulted inmate "J.B." and specifically that "**Lieutenant M.C.** punched J.B. in the face with a closed fist." *See id*. at 4, ¶ 5(b), (c) (emphasis added). Melvin's latter assertion closely parallels Boswell's complaint allegation that he "vividly recalls [Michael] Childers punching him in the face ..." [R. 1 at 11, ¶ 48]

And, particularly relevant here, Melvin's plea agreement asserts that the officers' "swing or kick rocks" policy was directly and intentionally implemented as a means of alleviating overcrowding at the prison's segregation unit. *Melvin*, [R. 10 therein at 2, ¶ 4(c)] That assertion offers meaningful support for the conclusion that the alleged actions of the officers, including Childers, were motivated by a subjective desire to further the BOP's business. If so, that conduct – even if a violation of BOP policy, a civil tort, or a criminal offense – could fall within the scope of employment under Kentucky law. *See Laible*, 91 F.4th at 445; *Rudd*, 2023 WL 4936671, at *3 (where prisoner alleged that BOP supervisors conspired to let guards attack and sexually abuse inmates "as a means of controlling prisoner behavior", a guard could "believe[] he was furthering his employer's interests and could have acted within the scope of his

16

employment."). Thus, even if the Court recharacterized the government's facial attack on subject matter jurisdiction as a factual one, there is reason to believe that challenge would be unsuccessful. Because such matters are not presently before the Court, it need not and does not decide them now.

### E. Civil Harassment (Count XI)

In Count XI, Boswell alleges that Arnett and Blevins "committed the act of civil harassment" by "engag[ing] in a course of conduct with the sole intent to intimidate, harass, annoy, or alarm" him. [R. 1 at 25, ¶¶ 157, 158] Boswell alleges only that their actions "caused [him] actual *alarm*." *See id*. at ¶ 160 (emphasis added). He seeks "all damages permitted by law" including, at least, "actual, compensatory, and punitive damages." *See id*. at 26, ¶ 163. Noting that the FTCA bars a prisoner from bringing a claim "for mental or emotional injury suffered while in custody without a prior showing of physical injury," 28 U.S.C. § 1346(b)(2), the United States seeks dismissal of this claim on the ground that the tort of harassment does not require resulting physical injury as one of its elements.[7] [R. 60 at 15-16]

The language in this FTCA provision is nearly identical to the physical injury requirement created by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, tit. VIII, 110 Stat. 1321 (1996). *See* 28 U.S.C. § 1997e(e). So, with exceptions not applicable here, courts treat them as coterminous. *Cf. West v. United States*, 729 F. App'x 145,

---

[7] The United States also argues that Boswell's civil harassment and menacing claims are presented in his complaint only in conclusory fashion. *See* [R. 60 at 17] But the government's argument on the matter is itself barely developed, so the Court declines to reach the issue without a more thorough discussion. And because the United States does not address the substance of Boswell's claim in Count XI, the Court assumes for present purposes and in its current procedural posture that Kentucky recognizes a civil tort claim for harassment and that it is viable under these circumstances. *See Taylor v. United States*, No. 7:22-CV-097-CHB-HAI, (E.D. Ky. Feb. 27, 2024), [R. 68 at 15], *recommended disposition adopted in part*, 2024 WL 4346372 (E.D. Ky. Sept. 30, 2024).

148 (3d Cir. 2018); *Sublet v. Million*, 451 F. App'x 458, 459 (5th Cir. 2011). The Sixth Circuit has held that "there is widespread agreement among our sister circuits that § 1997e(e) allows prisoners alleging non-physical injury to still pursue claims for nominal damages, as well as injunctive and declaratory relief." *Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020). And nominal damages may be recovered in a FTCA action where the governing state law allows for them. *White v. United States*, No. 21-6007, 2024 WL 3309752, at *13 (10th Cir. July 5, 2024) (*citing Keir v. United States*, 853 F.2d 398, 410 (6th Cir. 1988) as "recognizing that a plaintiff may seek nominal damages through an FTCA claim for battery where authorized by state law"). Here, Boswell expressly requested "all damages permitted by law." *See* [R. 1 at 26, ¶ 163] Of course, the United States is not liable for punitive damages. *See* 28 U.S.C. § 2674. But the government does not contend that, as a matter of either federal or Kentucky law, it is excepted from requests for nominal damages or declaratory relief. While the physical injury requirement thus limits the scope of the remedies available to Boswell, it does not mandate dismissal of the claim. The Court will therefore deny the United States' motion to dismiss Count XI.

### F. Menacing (Count XII)

In Count XII of his complaint Boswell contended, without specifying the conduct giving rise to this claim, that the seven BOP guards "committed the act of menacing upon Boswell" by "intentionally plac[ing him] in reasonable apprehension of imminent physical injury." *See* [R. 1 at 26, ¶¶ 167, 168] Upon initial screening the Court noted that a civil claim might be viable pursuant to Kentucky's negligence *per se* statute, *see* Ky. Rev. Stat. 446.070. *See* [R. 10 at 5-6] As it did with Boswell's harassment claim, the United States argues that dismissal is required

because the tort of menacing does not require resulting physical injury as one of its elements. [R. 60 at 15-16][8]

However, the Court need not decide this argument to dismiss Boswell's menacing claim. The Court recently dismissed this same claim against defendants Pearce and Pauley because Kentucky's negligence *per se* statute does not create a civil tort claim for an asserted violation of its criminal menacing statute. *See* [R. 80 at 8-9 (*citing Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 99-100 (Ky. 2000))] The Court will not repeat *verbatim* its reasoning here. Summarized, Ky. Rev. Stat. 508.050(1) applies universally, and thus does not expressly or impliedly specify a "class" of persons it was intended to protect as required to create a private right of action under established Kentucky precedent. *See id*. For the reasons previously stated, the Court will dismiss Count XII.

### G. Further Proceedings

Considering the foregoing, Boswell's Kentucky claims for battery in Count III and for civil harassment in Count XI remain pending further factual and/or legal development. *Pro se* prisoner actions are exempt from certain requirements regarding initial disclosures and discovery

---

[8] The Court has already disposed of the government's separate pleading sufficiency argument, *see* [R. 60 at 17], in note 7, *supra*. The United States also offers a one-sentence, throwaway argument that Boswell's menacing claim is time barred because he did not file it within one year. *See* [R. 80 at 17 n.6] The argument is meritless: Ky. Rev. Stat. 413.140(1) is a statute of limitations, not a statute of repose. *Cf. McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 18 (Ky. 1990) (distinguishing between the two types of statutes); *Hazel v. Gen. Motors Corp.*, 863 F. Supp. 435, 438 (W.D. Ky. 1994) (differentiating Ky. Rev. Stat. 413.140(1) from a statute of repose), *aff'd in part and remanded*, 83 F.3d 422 (6th Cir. 1996)). It is therefore a procedural requirement overridden by 28 U.S.C. § 2401(b). *See Bennett v. United States*, 44 F.4th 929, 934 (9th Cir. 2022) ("It is well-settled that the FTCA supplants state statute of limitations.") (cleaned up). It is not a substantive requirement that limits or extinguishes the underlying state law claim. *Cf. Huddleston v. United States*, 485 F. App'x 744, 745-46 (6th Cir. 2012). Therefore, 28 U.S.C. § 2401(b) provides the applicable limitations period. *Kennedy v. U.S. Veterans Admin.*, 526 F. App'x 450, 454-55 (6th Cir. 2013) (noting that FTCA "claimants must follow an administrative claims process and adhere to the FTCA's statute of limitations under 28 U.S.C. § 2401(b), even though these requirements differ from the applicable state law.").

established by Federal Rule of Civil Procedure 26. *See* Fed. R. Civ. P. 26(a)(1)(B)(iv). They are also exempt from the scheduling and time limitations set forth in Federal Rule of Civil Procedure 16. *See* LR 16.1(c); Fed. R. Civ. P. 16(b)(1). The Court will therefore assign this matter to a Magistrate Judge for pretrial management.

Defendant Samuel Patrick was served with process in May 2024. *See* [R. 33, 41] However, Patrick has never filed an answer or other responsive pleading in this case. On the one hand, Patrick appears to be in default; on the other, Boswell has taken no steps to prosecute his claims against Patrick for nearly a year. The parties shall address such matters in due course as part of pretrial proceedings.

Accordingly, it is **ORDERED** as follows:

1. The motion to dismiss filed by defendant United States [R. 60] is **GRANTED IN PART and DENIED IN PART**.

2. Boswell's claims in Count I and Count IV for negligence, and in Count XII for menacing, are **DISMISSED** for lack of subject matter jurisdiction.

3. The United States shall **FILE** its answer or other responsive pleading within twenty-one (21) days.

4. This matter is **REFERRED** to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) to conduct all pretrial proceedings, including preparing proposed findings of fact and conclusions of law on any dispositive motions.

5. The Clerk of the Court shall **ASSIGN** this matter to a Magistrate Judge.

Entered: March 31, 2025.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY